IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CT-3139-FL

| | | |
|---|---|---|
| KEVIN GIOGLIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DEVON FAULKNER, DANIEL BRAME, and DONALD MOBLEY, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The matter is before the court on defendants' motion for summary judgment (DE 41) pursuant to Federal Rule of Civil Procedure 56. The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' motion.

## STATEMENT OF THE CASE

On May 27, 2014, plaintiff, a state inmate, filed this civil rights action, *pro se,* pursuant to 42 U.S.C. § 1983, against defendants Daniel Brame ("Brame"), Devon Faulkner ("Faulkner"), and Donald Mobley ("Mobley"). In his complaint, plaintiff alleged that defendant Faulkner used excessive force against him in violation of the Eighth Amendment to the United States Constitution and that defendant Brame acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Plaintiff also alleged that defendant Mobley failed to protect him from the alleged excessive force used by defendant Faulkner. On the same date, plaintiff filed a motion to appoint counsel and then filed a motion to compel discovery. The court subsequently conducted a frivolity review of plaintiff's complaint and allowed plaintiff to proceed with his action. The

court, however, denied plaintiff's motion to appoint counsel and denied as premature plaintiff's motion to compel.

The North Carolina Attorney General then issued waivers of service on behalf of defendants Brame and Mobley. As for defendant Faulkner, the North Carolina Department of Public Safety ("DPS") notified the court on January 27, 2015, that it was not able to procure a waiver of service of process for defendant Faulkner because Faulkner no longer was employed by DPS. DPS provided the court with defendant Faulkner's last known address, and the United States Marshal attempted to serve defendant Faulkner at the address provided. The Marshal's attempt at service was returned as unexecuted.

On May 18, 2015, plaintiff filed a response to the answer filed by defendants Brame and Mobley. On June 4, 2015, plaintiff filed a motion for entry of default as to defendant Faulkner. Then, on June 8, 2015, the court ordered plaintiff to show cause within 14 days as to his failure to obtain service on defendant Faulkner within 120 days as required by Federal Rule of Civil Procedure 4(m). Plaintiff was cautioned that failure to do so would result in dismissal of plaintiff's action against Faulkner without prejudice. On the same date, defendants Mobley and Brame filed a motion to strike plaintiff's response to their answer. On June 18, 2015, plaintiff filed a motion requesting that the court serve defendant Faulkner by publication. On July 21, 2015, the court denied without prejudice plaintiff's motion for entry of default against defendant Faulkner and denied plaintiff's motion to serve defendant Faulkner by publication. The court also determined that plaintiff did not show sufficient cause to prevent the dismissal of defendant Faulkner for failure to obtain service in accordance with Rule 4(m), and the court dismissed Faulkner from this action without prejudice.

Finally, the court granted the remaining defendants' motion to strike plaintiff's response to their answer.

On August 28, 2015, plaintiff filed a motion to compel discovery. The motion was fully briefed. On October 7, 2015, the court granted in part and denied in part plaintiff's motion. Specifically, the court granted plaintiff's motion to compel discovery related to the alleged excessive use of force incident involving defendant Faulkner on the grounds that it could lead to the discovery of evidence involving plaintiff's supervisor liability claim against defendant Mobley. The court denied the remainder of plaintiff's motion to compel.

On November 24, 2015, defendants Brame and Mobley filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) arguing that plaintiff failed to exhaust his administrative remedies. Alternatively, defendants argue that plaintiff cannot establish a constitutional violation and assert the affirmative defense of qualified immunity. In support of their motion, defendants each submitted personal affidavits. Defendants also submitted both an affidavit from DPS's lead registered nurse at Warren, Cheryl Hanks, and an incident report. Finally, defendants submitted an affidavit from Executive Director of the North Carolina Inmate Grievance Resolution Board, Finesse Couch, and grievances. The motion was fully briefed. Finally, plaintiff filed a motion to appoint counsel, which the court denied.

## STATEMENT OF THE FACTS

Except as otherwise noted below, the undisputed facts are as follows. Plaintiff's action relates to an use of force incident on January 10, 2014, at Warren Correction Institution ("Warren"). (Compl. ¶ IV; Mobley Aff. Ex. C). On that date, defendant Brame instructed Warren unit staff to search plaintiff's cell while plaintiff was at Brame's office receiving a copy of a December 14, 2014,

3

disciplinary report for an incident involving plaintiff's possession of security threat group materials. (Brame Aff. ¶¶ 5, 6 and Ex. A). Brame instructed staff to search plaintiff's cell at that time because plaintiff had been found with a shank the previous week and stated to Brame that he keeps a shank on him at all times. (Id. ¶ 6).

At approximately 10:20 a.m., plaintiff arrived back at his cell and observed defendant Faulkner conducting the search. (Mobley Aff. Ex. A, p. 8 and Ex. C. p. 2; Compl. ¶ IV). Plaintiff expressed concern over the fact that defendant Faulkner was searching plaintiff's cell alone in light of the fact that DPS policy required the presence of two correctional officers during cell searches and asked to see the sergeant. (Mobley Aff. Ex. A, p. 8). Correctional staff then asked plaintiff to enter his cell and plaintiff complied. (Id.) "Upon [defendant Faulkner] trying to remove [plaintiff's] handcuffs, his rubber glove pinched my hair and skin on my arm[.] [D]ue to reflex[,] I closed my hand on his, he assumed I was trying to assault him, so Officer Faulkner then used excessive force by j[e]rking on my arms while I was still hand[] cuffed, he did this even though I had long let go of his hand." (Id.)

Shortly after the incident, correctional staff informed Brame that plaintiff had been the subject of a use of force incident. (Brame Aff. ¶ 7). Brame, in turn, sent an email to members of Warren correctional staff at 10:40 a.m., informing them of the incident and stating that "[m]edical has been called to check out inmate Gioglio." (Id. Ex. B, p. 4). Plaintiff, however, states that medical staff did not immediately conduct a medical screening and that Officer Daughtridge "called [defendant Brame] several times concerning [plaintiff's] injuries." (Compl. ¶ IV). Plaintiff further states that it was not until Nurse Woodard "came around with medication" that he received

4

treatment. (Id.) Brame denies that Officer Daughtridge contacted him regarding plaintiff's alleged injuries following the use of force incident. (Brame Aff. ¶ 8).

It is uncontested that medical staff ultimately conducted a post-use of force medical screening at 3:10 p.m. on the date of the incident. (Hanks Aff. Ex. A). During the examination, the screening nurse noted that plaintiff sustained small abrasions to his hands with no bleeding and that plaintiff complained of moderate pain of 5 on a scale of 1-10. (Id.) The nurse then cleaned plaintiff's abrasions and applied bandages. (Id.) Plaintiff did not subsequently submit any sick calls related to the January 10, 2014, use of force incident. (Hanks Aff. ¶ 6).

Following the January 10, 2014, use of force incident, plaintiff was charged with an A-03 offense for assaulting a staff member and a B-18 offense for threatening to harm or injure a staff member. (Mobley Aff. Ex. C, p. 2). The charges were referred to a disciplinary hearing officer ("DHO") for adjudication. (Id.) The DHO found plaintiff guilty of both charges based upon the following evidence:

> On 1/10/14 at 1020, Officer Faulkner stated that while removing the hand cuffs inmate Gioglio, Inmate Gioglio grabbed officer Faulkner with both hands and attempted to pull him through the trap door. When Officer Faulkner (sic) broke away, inmate Gioglio stated he will throw [sh–] on Officer Faulkner if he opens his trap door again. Inmate Gioglio is being charged with an A3 and B18. The DHO advised inmate of his rights in the appeal and disciplinary process and during the hearing inmate pled not guilty. Inmate did not request live or written witness statements, nor staff assistance. Inmate Gioglio did request physical evidence of pictures of his wrist. The investigator states that the pictures are not available[.] Inmate Gioglio states he was returning from the AUM office that he entered cell 346, the cell door was closed and the food trap door was opened. Inmate Gioglio stated that he stuck his hands out to get his handcuffs moved and Officer Fauker's (sic) gloved hand pinched and pulled the hair and skin. Inmate Gioglio states that his reflex and reaction he grabbed his hands. Inmate Gioglio states that Officer Fauker (sic) pulled on the middle of the chain of the handcuffs and proceeded to

5

> try to severely injure him, because he thought that he was going to get assaulted.

(Id. p. 4). For each offense, plaintiff received 30 days segregation, 10 days loss of good-time credit, 30 hours of extra duty, suspension of his canteen privileges for 90 days, two months of limited draw, and demotion to close custody. (Id. p. 2).

While employed at Warren, defendant Faulkner was involved in only one other use of force incident which occurred on September 3, 2013. (Id. Ex. B., p. 1). Plaintiff had no involvement with the September 3, 2013, incident. (Id. ¶ 10 and Ex. B, p. 1). Additionally, no other inmate filed a grievance against defendant Faulkner while Faulkner was employed at Warren. (Id. ¶ 10.)

## DISCUSSION

A.    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.  Analysis

　　1.　Exhaustion of Administrative Remedies

Defendants assert that plaintiff's claims should be dismissed for failure to exhaust his administrative remedies prior to filing this action. Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") requires a prisoner to properly exhaust his administrative remedies before filing an action under 42 U.S.C. § 1983 concerning his confinement. Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1856 (2016) ("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."); Woodford v. Ngo, 548 U.S. 81, 83–85 (2006) (requiring "proper" exhaustion of administrative remedies); see Jones v. Bock, 549 U.S. 199, 217 (2007) ("failure to exhaust is an affirmative defense under [42 U.S.C. § 1997e]"); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005). The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory. Woodford, 548 U.S. at 85; Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."). A prisoner must exhaust his administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). "[U]nexhausted claims cannot be brought in court." Jones, 549 U.S. at 211.

Beginning with plaintiff's claim that defendant Brame acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment, the record reflects that plaintiff did not file any grievances related to this claim against defendant Brame. (See Couch Aff. Ex. 2).

7

Plaintiff's fragmented and conclusory allegations that unknown officers interfered with his ability to file unspecified grievances on unspecified dates are insufficient to refute defendants' arguments in support of their exhaustion defense. Cf. Hill v. Haynes, 380 F. App'x 268, 273-274 (4th Cir. 2010) (finding genuine issues of material fact where plaintiff provided specific and detailed allegations regarding defendants' hindering his ability to exhaust). Thus, plaintiff's action against defendant Brame is DISMISSED without prejudice for failure to exhaust administrative remedies.

The court now turns to plaintiff's supervisor liability claim against defendant Mobley, which relates to the January 10, 2104, use of force incident. It is undisputed that plaintiff filed a grievance regarding the use of force incident. (Couch Aff. Ex. 2). Defendant Mobley, however, argues that plaintiff's grievance does not make any allegations against him and that a grievance reporting a single use of force incident is insufficient to put defendant Mobley on notice of plaintiff's supervisor liability claim. However, the fact that plaintiff did not specifically name defendant Mobley in his grievances is not fatal because the PLRA does not require that a plaintiff name an individual in his grievance in order to exhaust his administrative remedies against that individual. Jones, 549 U.S. at 922; see Moore v. Bennette, 517 F.3d 717, 726 (4th Cir. 2008) (stating that the administrative remedy procedure requires "only that a grievance be submitted on a Form DC-410, which does not require identification of the persons responsible for the challenged conduct."). Moreover, the record reflects that defendant Mobley both reviewed and signed plaintiff's grievance related to the excessive force incident. Accordingly, defendant Mobley had sufficient notice of plaintiff's supervisor liability claim and defendants' motion for summary judgment as to exhaustion for this claim is DENIED. Finally, the court turns to plaintiff's mail-related claims. Plaintiff alleges in his complaint that unknown officers violated his constitutional rights "by hold[ing] his mail, opening

8

his legal mail without plaintiff [] being present, and refusing plaintiff['s] right to access the court by not allowing proper legal material to come to plaintiff . . . ." (Compl. p. 7). Plaintiff did not file a grievance related to any of the foregoing claims. Thus, these claims are DISMISSED without prejudice for failure to exhaust administrative remedies.[1]

2. Supervisor Liability

Defendant Mobley, the only remaining defendant, asserts the affirmative defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The court first determines whether defendants violated plaintiff's constitutional rights with respect to plaintiff's supervisor liability claim. The Fourth Circuit has set forth three elements necessary to establish supervisory liability under § 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff;

---

[1] Even if plaintiff had exhausted his administrative remedies for these claims, the claims still would be dismissed without prejudice because plaintiff failed to provide any evidentiary or factual support for his claims. Specifically, plaintiff does not state who caused these alleged constitutional deprivations or on what date the alleged conduct occurred. Thus, these claims, alternatively, as DISMISSED without prejudice for failure to state a claim. See Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009) (citation omitted); see, e.g., White v. White, 886 F.2d 721, 723 (4th Cir.1989) (stating minimum level of factual support required).

9

(2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and

(3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." Id.; see also Wellington v. Daniels, 717 F.2d 932, 936 (4th Cir.1983) (supervisory liability requires "a history of widespread abuse.").

In this case, plaintiff does not present any evidence showing defendant Mobley had knowledge that defendant Faulkner posed "a pervasive and unreasonable risk" of constitutional injury to plaintiff. Rather, plaintiff simply makes general and conclusory allegations that defendant Mobley knew that Faulkner posed a risk. Such allegations are insufficient to establish a constitutional violation.[2] See Iqbal, 556 U.S. at 68. Further, plaintiff presents no evidence to satisfy the requirement in the Shaw test that "the conduct is widespread, or at least has been used on several different occasions." See Shaw, 13 F.3d at 799. On the contrary, the record reflects that no other inmate, aside from plaintiff, complained that defendant Faulkner used excessive force at Warren. (See Mobley Aff. ¶ 10 and Ex. B). Additionally, plaintiff's witness statement following the events at issue demonstrate that plaintiff's own conduct initiated the use of force incident at issue. (See id.

---

[2] To the extent plaintiff asserts that he contacted a magistrate judge following the incident at issue, such allegation does not support a finding that defendant Mobley had notice that Faulkner posed any risk to plaintiff because plaintiff contacted the magistrate after the incident occurred. Further, to the extent plaintiff asserts that defendant Mobley violated his constitutional rights by placing plaintiff on the same solitary confinement unit as defendant Faulkner, there is no evidence to suggest that Mobley knew Faulkner posed a threat to plaintiff and plaintiff does not complain of any incident with Faulkner while in solitary confinement.

10

Ex. A, p. 8). Based upon the foregoing, there is no evidence that defendant Mobley had actual or constructive knowledge of a "pervasive and unreasonable risk" of unconstitutional behavior on the part of defendant Faulkner. Thus, plaintiff failed to establish a constitutional violation, and defendant Mobley's is entitled to qualified immunity for this claim.

To the extent plaintiff contends that defendant Mobley violated DPS policy, the mere violation of a prison regulation does not automatically rise to the level of a constitutional violation cognizable under § 1983. Sandin v. Conner, 515 U.S. 472, 481–82 (1995) (stating that prison regulations are primarily designed to guide correctional officials in the administration of a prison and not designed to confer rights on inmates); Williams v. Benjamin, 77 F.3d 756, 766 n. 5 (4th Cir. 1996) (finding that even if the guards were found to have violated the prison's four-point-restraint policy, the plaintiff would not automatically prevail on his Eighth Amendment claim). Thus, defendant Mobley's motion for summary judgment is GRANTED as to any policy-related claim.

      3.      Disciplinary Conviction

Plaintiff asserts that the disciplinary proceedings arising out of the use of force incident violated the Due Process Clause. The Due Process Clause mandates several procedural safeguards before an inmate may be punished for violating prison disciplinary rules with the loss of protected liberty interest, such as earned good-time credit, or with deprivation of property. Wolff v. McDonnell, 418 U.S. 539, 557 (1974). These limited due process rights include advanced, written notice of the charges, written findings, and a limited right to call witnesses. See id. at 563-64. However, an inmate only is entitled to these procedural protections when the conviction results in the loss of statutory good-time credits or where some other liberty or property interest is at issue. Id. Additionally, the findings of a prison disciplinary board must be supported by some evidence

11

in the record, Walpole v. Hill, 472 U.S. 445, 454-55 (1985), and be made by an impartial adjudicator. Wolff, 418 U.S. at 570-71.

Plaintiff does not specify how the instant disciplinary proceedings violated his due process rights. To the extent plaintiff challenges that sufficiency of the evidence used to convict him of the two charged offenses, the record reflects that plaintiff admits in his witness statement that his own reflex reaction to defendant Faulkner's attempt to handcuff plaintiff made defendant Faulkner think plaintiff was going to assault him. (Mobley Aff. Ex. A, p. 8 and Ex. C, p. 4). Accordingly, there is "some evidence" to support plaintiff's A-03 and B-18 disciplinary convictions, and the Due Process Clause was not violated. See, e.g., Hill, 472 U.S. at 454–56; Baker, 904 F.2d at 932.

As for the remaining Wolff requirements, plaintiff received advance written notice of the disciplinary charge and he received a written statement by the DHO of the evidence relied on and the reasons for the disciplinary action. Plaintiff presents no evidence to the contrary. Thus, there is no due process violation, and defendant Mobley is entitled to qualified immunity for this claim.

To the extent plaintiff argues that prison officials pursued false disciplinary charges, he may not proceed with such claim at this time. In order to recover damages for an allegedly unconstitutional conviction, a plaintiff, proceeding pursuant to § 1983 must prove that the conviction or sentence at issue has been reversed on direct appeal, expunged by executive order, declared invalid by state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477, 486-487 (1994). The holding in Heck also extends to a prisoner's claim for damages related to the loss of earned good time credits as a result of prison disciplinary proceedings. See Edwards v. Balisok, 520 U.S. 641, 646 (1997). Here, plaintiff's disciplinary convictions have not been invalidated. Thus, because

12

plaintiff is unable to meet Heck's requirements, defendant Mobley is entitled to qualified immunity for this claim.

    4.    Retaliation Claims

Plaintiff alleges several retaliation-related claims connected with the January 10, 2014, use of force incident. Claims of retaliation are treated with skepticism in the prison context. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). This is "because every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Id. (internal quotations omitted). Accordingly, for an inmate to state a colorable claim of retaliation, the alleged retaliatory action must have been taken with regard to the exercise of some constitutionally protected right, or the retaliatory action itself must violate such a right. Id. at 1318 (noting that to state a claim for retaliation, an inmate must show that "each retaliatory act violate[d] some constitutional right of an inmate or constitute[d] punishment for the exercise of a constitutional right"); see Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Additionally, a plaintiff must allege specific facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. Adams, 40 F.3d at 74–75. Finally, a plaintiff must show that he "suffered some adversity in response to [his] exercise of protected rights." American Civil Liberties Union of Maryland, Inc. v. Wicomico County Md., 999 F.2d 780, 785 (4th Cir. 1993).

To the extent plaintiff alleges defendant Mobley retaliated against him for filing grievances, such claim fails because inmates do not have a constitutional right to participate in a grievance procedure. See Daye v. Rubenstein, 417 F. App'x 317, 319 (4th Cir. 2011). Plaintiff further failed to present any evidence or facts to support this claim. Because plaintiff failed to establish a constitutional violation, defendant Mobley is entitled to qualified immunity for this claim.

13

To the extent plaintiff asserts a retaliation claim in connection with his complaints that prison officials held or opened his mail, denied him access to the courts, or pursued disciplinary charges against him, plaintiff again fails to establish a retaliation claim. Plaintiff's only factual support for these retaliation claims are his conclusory allegations stating that the above-stated actions were retaliatory. Plaintiff provides no facts or evidence to suggest that the exercise of any constitutional right and the above-stated actions were related. Plaintiff further does not present any evidence or facts to suggests that defendant Brame or Mobley was involved in the alleged retaliatory conduct. Plaintiff's conclusory allegations of retaliation are insufficient to establish a constitutional violation. Adams, 40 F.3d at 74. Thus, defendant Mobley is entitled to qualified immunity for these claims.

        5.        Access to Courts

Plaintiff makes conclusory allegations that he was denied access to courts in connection with the use of force incident. In order to state a claim for denial of access to the courts, the inmate must show actual injury or that a defendant's conduct hindered his efforts to pursue a legal claim. See, e.g., Lewis v. Casey, 518 U.S. 343, 351–52 (1996); Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006). The Supreme Court held in Lewis that inmates must be provided "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Lewis, 518 U.S. at 351 (quotation omitted). The right to access the courts extends to direct criminal appeals, habeas corpus proceedings, and civil rights actions challenging conditions of confinement. Id. at 354–55. The actual injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or impeded." Id. at 353. The Court did not extend the holding to include the right to "litigate effectively once in court." Id. at 354 (disclaiming language in Bounds v. Smith, 430 U.S. 817, 825 (1977), suggesting otherwise). Because plaintiff

14

has not alleged that a nonfrivolous legal claim had been frustrated or impeded, plaintiff failed to establish that he was denied access to the courts. Thus, defendant Mobley is entitled to qualified immunity for this claim.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE 41) is GRANTED. Plaintiff's action against Brame and plaintiff's mail-related claims are DISMISSED without prejudice for failure to exhaust administrative remedies. Plaintiff may re-file these claims after he completes the exhaustion process. The remainder of plaintiff's claims are DISMISSED with prejudice.

SO ORDERED, this the 11th day of August, 2016.

LOUISE W. FLANAGAN
United States District Judge

15

Case 5:14-ct-03139-FL   Document 54   Filed 08/11/16   Page 15 of 15